UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KALEY WEST,**

                Plaintiff,

**vs.**                            **CASE NO. _____**

**ONEMAIN FINANICAL SERVICES,
INC. f/k/a SPRINGLEAF FINANCIAL
SERVICES, INC.,**

                Defendant.
_____/

## COMPLAINT
## JURY DEMAND

1.      Plaintiff alleges Defendant "robo-called" her numerous times per day, on back to back days in stark violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") and the Telephone Consumer Protection Act, 42 U.S.C. § 227 *et seq.* ("TCPA"). Defendant continued its relentless call campaign despite Plaintiff's numerous stop call requests and knowledge that Defendant's nonstop calls were getting Plaintiff in trouble at work.

### INTRODUCTION

2.      Robocalls are the #1 consumer complaint in America today, with more than 1.9 million complaints filed to the Federal Trade Commission in the first five months of 2017 alone.[1]

---

[1] *FTC Escalates the Fight against Illegal Robocalls Using Consumer Complaints to Aid Industry Call-Blocking Solutions*, FEDERAL TRADE COMMISSION (Aug. 1, 2017), https://www.ftc.gov/news-events/press-releases/2017/08/ftc-escalates-fight-against-illegal-robocalls-using-consumer.

3. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

4. To protect consumers from the nuisance, invasion of privacy, cost, and inconvenience of autodialed calls and pre-recorded or artificial voice message calls ("robocalls"), Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), which forbids making non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice message to a cellular telephone without the prior express consent of the called party.

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).

6. Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket because they are so inexpensive to make. "With such a cheap and

scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done: Hearing Before the Senate Comm. on Commerce, Sci., and Transp.'s Subcomm. on Consumer Prot., Prod. Safety, and Ins.*, 113th Cong. 5 (July 10, 2013) (statement of statement of Lois Greisman, Associate Director, Division of Marketing Practices, FTC).[2]

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) and 47 U.S.C. § 227(b)(3).  See Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012). Venue in this District is proper because Defendant resides here and a substantial part of the events or omissions giving rise to the claim occurred within this District.

## PARTIES

8. Plaintiff, Kaley West is a natural person and a citizen of the State of Florida.

9. Plaintiff is a "debtor" as defined by the FCCPA.

10. Defendant, OneMain Financial Services, Inc. f/k/a Springleaf Financial Services, Inc. is a foreign company organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices in Evansville, Indiana.

---

[2] Available at: https://www.gpo.gov/fdsys/pkg/CHRG-113shrg85765/pdf/CHRG-113shrg85765.pdf (last accessed Sept. 22, 2017)

At all material times herein, Defendant engaged in its usual and customary business within Hillsborough County, Florida.

11. Defendant is a "person" as that term is defined by Fla. Stat. § 1.01(3).

12. The FCCPA applies to any "person" collecting or attempting to collect a consumer debt. E.g., Gann v. BAC Home Loans Servicing LP, 145 So. 3d 906 (Fla. 2d DCA 2014); Schauer v. General Motors Acceptance Corp., 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002).

## FACTUAL ALLEGATIONS

13. At all times herein, it was alleged by Defendant that Plaintiff had a personal loan with Defendant, account number ending in 7635. Hereinafter referred to as "Plaintiff's account."

14. Plaintiff's account is associated with an alleged debt. Hereinafter referred to as "the alleged debt."

15. The alleged debt arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes, namely: monies allegedly owed by Plaintiff associated with a personal loan.

16. For months, in an attempt to collect the alleged debt, Defendant intentionally harassed and abused Plaintiff by calling her cellular telephone several times a day, and on back to back days, with such frequency as can reasonably be expected to harass.

17. Plaintiff's cellular telephone number is 484-▬-2815.

18. Plaintiff is the regular, customary user and carrier of the cellular telephone number 484-■■■-2815.

19. By way of example, on November 21, 2015, Defendant called Plaintiff at least four (4) times at approximately 8:18 AM; 9:24 AM; 10:13 AM, and 12:13 PM.

20. By way of example, on December 21, 2015, Defendant called Plaintiff at least three (3) times at approximately 11:30 AM, 2:26 PM, and 6:41 PM.

21. By way of example, on December 22, 2015, Defendant called Plaintiff at least three (3) times at approximately 10:29 AM, 11:19 AM, and 6:41 PM.

22. The telephone calls placed by Defendant originated from various telephone numbers belonging to Defendant, including, but not limited to: 888-800-2527; 800-742-5465; 812-492-2500; and 844-743-8163.

23. Upon information and belief, Defendant placed the telephone calls from the different telephone numbers in order to trick Plaintiff into answering Defendant's telephone call.

24. The telephone calls were so numerous and from so many numbers that Plaintiff was unable to keep track of every call; however, Defendant's records will show the total number of calls it placed.

25. Upon information and belief, within four years of this Complaint, Defendant placed hundreds of telephone calls to Plaintiff's cellular telephone.

26. Each call Defendant made to Plaintiff was made using an automatic telephone dialing system ("ATDS") that has the capacity to store or produce telephone

numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by the TCPA, 47 U.S.C. § 227(a)(1).

27. Furthermore, upon information and belief, each of the calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(a)(1).

28. In addition to the overall frequency and pattern of the telephone calls, Defendant's records will show that that the telephone calls were made to Plaintiff's cellular telephone with an ATDS and/or a pre-recorded or artificial voice.

29. Defendant initiated each of the telephone calls at issue to Plaintiff's aforementioned cellular telephone number without the "prior express consent" of Plaintiff as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

30. Alternatively, Defendant initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone number subsequent to Plaintiff's revocation of any "prior express consent" Plaintiff may have previously provided to Defendant or that Defendant mistakenly believed it had.

31. When Plaintiff fell behind on her loan payments, she assured Defendant on multiple occasions that she would pay online as soon as she could and requested that Defendant stop calling her.

32. When Plaintiff requested that Defendant stop calling her, Defendant informed Plaintiff that the calls would continue until the debt was paid.

33. By way of example, on or about December 14, 2015, Plaintiff informed a representative named "Rebecca" that she would not be able to make another payment

until February 2016, that she was being harassed by the constant telephone calls, and that the nonstop calls were getting Plaintiff in trouble at work. Rebecca indicated she could only stop the calls for five days.

34. Defendant continued to place daily, repeated telephone calls to Plaintiff.

35. On January 5, 2016, Plaintiff informed a representative named "Natalie" that she had already told Defendant that she couldn't make a payment until February 2016 and that constant telephone calls were harassing. "Natalie" told Plaintiff that the calls would continue because Defendant was obligated to do what's necessary to collect payment.

36. Defendant ignored each of Plaintiff's stop call requests and continued to place daily, repeated telephone calls to Plaintiff until Plaintiff paid off the debt on or about February 5, 2016.

37. Defendant knows it is not permitted to place telephone calls to cellular telephones using an ATDS or a pre-recorded or artificial voice without the prior express consent of the called party.

38. Defendant's continued use of an ATDS or a pre-recorded or artificial voice to place numerous telephone calls to Plaintiff's cellular telephone in an attempt to collect the alleged debt even after Plaintiff repeatedly requested that Defendant stop calling her reflects that Defendant's conduct was knowing and willful.

39. Defendant's corporate policies and procedures are structured as to continue to call individuals like Plaintiff, despite these individuals revoking any consent Defendant may have had.

40. Defendant's corporate policies and procedures provide no means for individuals like Plaintiff to have their cellular numbers removed from Defendant's call list.

41. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

42. In the last three (3) years, Defendant has had 707 complaints reported to the Better Business Bureau (BBB)[3], of which 227 of those complaints are classified as being related to "Billing/Collection Issues."

43. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227 (b)(1)(A).

44. As a result of Defendant's unlawful, abusive, and intrusive conduct set forth above, the Plaintiff has been angered, worried, anxious, and stressed.

45. As a result of Defendant's relentless telephone call campaign, Defendant caused Plaintiff actual harm, not only because Plaintiff was subjected to the aggravation that necessarily accompanies these calls, but also because the calls used up her cellular minutes, diminished her cellular battery life, and wasted her data storage capacity.

46. Defendant's actions were willful and knowing.

---

[3] Retrieved from https://www.bbb.org/evansville/business-reviews/consumer-finance-and-loan-companies/onemain-financial-in-evansville-in-99266/reviews-and-complaints, last accessed on September 22, 2017.

## COUNT I
### (Violation of the FCCPA)

47. Plaintiff incorporates Paragraphs 1 through 48 above as if fully set forth herein.

48. Defendant willfully engaged in conduct which can reasonably be expected to abuse or harass the debtor in violation of the FCCPA, Fla. Stat. § 559.72(7).

49. Defendant willfully communicated with the debtor with such frequency as can reasonably be expected to harass the debtor in violation of the FCCPA, Fla. Stat. § 559.72(7).

50. Defendant asserted the existence of a legal right when Defendant knew that right did not exist in violation of the FCCPA, Fla. Stat. § 559.72(9), when Defendant continued to call Plaintiff using an ATDS and/or prerecorded voice after Plaintiff revoked any prior express consent Defendant believed it had in violation of the TCPA. See Kaplan v. Assetcare, Inc., 88 F.Supp.2d 1355, 1363 (S.D.Fla. 2000) (stating that Fla. Stat. § 559.72(9) is violated when defendant attempts to collect a debt in a manner prohibited by another statute).

51. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by the FCCPA.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

    a. Damages;

    b. Injunctive relief;

    c. Attorney's fees, litigation expenses and costs of suit; and

## COUNT VII
### (Violation of the TCPA)

54. Plaintiff incorporates Paragraphs 1 through 48 above as if fully set forth herein.

55. Defendant placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or pre-recorded or artificial voice in violation of the TCPA, 47 U.S.C. § 227 (b)(1)(A)(iii).

56. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice in violation of the TCPA, 47 U.S.C. § 227 (b)(1)(A)(iii).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

   a. Damages;
   b. A declaration that Defendant's debt collection practices violate the TCPA;
   c. A permanent injunction prohibiting Defendant from placing non-emergency calls to the cellular telephone of Plaintiff using an automatic telephone dialing system or pre-recorded or artificial voice of the called party; and engaging in the complained of practices; and
   d. Such other or further relief as the Court deems proper.

### JURY DEMAND

Plaintiff demands trial by jury.

/s/ James S. Giardina

[ X ] James S. Giardina
Fla. Bar No. 0942421
[   ] Kimberly H. Wochholz
Fla. Bar No. 0092159
**The Consumer Rights Law Group, PLLC**
3104 W. Waters Avenue, Suite 200
Tampa, Florida 33614-2877
Tel: (813) 435-5055 ext 101
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com
Kim@ConsumerRightsLawGroup.com
*Counsel for Plaintiff*